IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

SCOTT R. FRANK,                                    Case No. 6:14-cv-01434-AC

          Plaintiff,                           OPINION AND ORDER

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

          Defendant.

---

RICHARD F. McGINTY
McGinty & Belcher, Attorneys
P.O. Box 12806
Medford, OR 97301
      Attorney for plaintiff

BILLY J. WILLIAMS
Interim United States Attorney
District of Oregon
JANICE E. HEBERT
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, OR 97201-2902

JORDAN D. GODDARD
Special Assistant United States Attorney
Office of the General Counsel

Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075
     Attorneys for defendant

ACOSTA, Magistrate Judge:

Scott Frank ("plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Commissioner's decision is reversed and this case is remanded for further proceedings.

## Procedural Background

Plaintiff applied for DIB on November 14, 2011, alleging disability as of November 11, 2011, due to a congestive heart condition. (Tr. 16, 55.) His application was denied initially and upon reconsideration. (Tr. 62, 65.) A hearing convened on April 30, 2013, before an Administrative Law Judge ("ALJ"). (Tr. 30-54.) On May 15, 2013, the ALJ issued a decision finding plaintiff not disabled. (Tr. 16-23.) Plaintiff timely requested review of the ALJ's decision and, after the Appeals Council denied review, plaintiff filed a complaint in this court. (Tr. 1-4.)

## Factual Background

Born on August 31, 1964, plaintiff was 47 years old on the alleged onset date of disability and 48 years old at the time of the hearing. (Tr. 30-31, 55.) He is a high school graduate and later obtained a commercial driver's license. (Tr. 32-33, 55.) Plaintiff previously worked as a truck driver. (Tr. 36, 159.)

/ / / / /

Page 2 - OPINION AND ORDER

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 42 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity;" if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b).

At step two, the Commissioner resolves whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner evaluates whether the claimant's impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. § 404.1520(d). If so, the claimant is presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant still can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(f). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141.

At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Id.* at 142; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

### The ALJ's Findings

At step one of the five-step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since November 11, 2011, the alleged onset date. (Tr. 18.) At step two, the ALJ found plaintiff had the following severe impairment: "congestive heart failure." *Id.* At step three, the ALJ found plaintiff's impairment did not meet or equal the requirements of a listed impairment under 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("the Listings"). *Id.*

Accordingly, the ALJ continued the sequential evaluation process to determine how plaintiff's medical limitations affected his ability to work. The ALJ resolved that plaintiff had the following residual functional capacity ("RFC"):

> . . . [he can] perform less than the full range of light work . . . [h]e can

Page 4 - OPINION AND ORDER

> lift and carry 20 pounds occasionally and 10 pounds frequently; he
> can stand, walk and sit for 6 out of 8 hours each.

(Tr. 18-19.)

At step four, the ALJ found plaintiff was unable to perform any past relevant work.  (Tr. 21.)

At step five, the ALJ determined plaintiff had the RFC to perform the following representative

occupations: office helper, facility rental clerk, and cashier II.  (Tr. 22.)  Therefore, the ALJ

concluded plaintiff was not disabled under the Act.  (Tr. 22-23.)

### Discussion

Plaintiff argues the ALJ erred by: (1) failing to find plaintiff meets or equals Listing 4.02;

(2) erroneously discrediting plaintiff's testimony; (3) erroneously discrediting lay witness testimony;

(4) improperly evaluating his functional abilities under the New York Heart Association ("NYHA")

II rating system; and (5) failing to incorporate all of plaintiff's limitations into the RFC and

hypothetical questions to the vocational expert ("VE").

## I. Listing 4.02

Plaintiff argues the ALJ erred by finding plaintiff did not meet the criteria for Listing 4.02

at step three of the sequential evaluation process.  At step three, the ALJ evaluates whether a

plaintiff's impairments meet or equal one of the listed impairments. 20 C.F.R. § 404.1525.  If

plaintiff produces sufficient medical evidence to satisfy a listing's requisites, the plaintiff is

presumed disabled. *Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003).  At step two, the ALJ

found plaintiff has the severe impairment of "congestive heart failure." (Tr. 18.)  Accordingly, the

relevant Listing is 4.02 for "chronic heart failure." 20 C.F.R. Pt. 404 Subpt. P, App. 1 § 4.02.  In

order to meet the Listing, plaintiff must satisfy one set of criteria in § 4.02A and B. Plaintiff argues

that he meets 4.02A(1) for systolic failure due to an ejection fraction of 30 percent or less during

Page 5 - OPINION AND ORDER

a period of stability, and that he meets 4.02B(3) based on his inability to adequately perform on an

exercise tolerance test at a workload equivalent to five metabolic equivalents ("METs") or less due

to dyspnea, fatigue, palpatations, or chest discomfort. Pl.'s Br. 6; 20 C.F.R. Pt. 404, Subpt. P, App.

1 § 4.02.

The ALJ noted plaintiff had an ejection fraction of 20 to 25 percent in January 2011. (Tr.

19, 231.) The record reflects that plaintiff subsequently had a defibrillator implanted in May 2011.

(Tr. 235.) The ALJ noted that although plaintiff continued having symptoms such as fatigue,

shortness of breath, and coughing, a medical evaluator opined the symptoms were possibly related

to an upper respiratory ailment such as chronic rhinitis. (Tr. 19, 324.) The ALJ further noted that

despite plaintiff's symptom complaints, the medical record illustrated that the defibrillator was

functioning normally and January 2013 chest x-rays showed no acute abnormalities. (Tr. 19, 318.)

Defendant argues that in order to meet § 4.02A, plaintiff must demonstrate an ejection fraction of

30 percent or less lasting at least twelve months. Def.'s Br. 5. If that was true, however, several

of the requirements under § 4.02B would be redundant. *See, e.g.* § 4.02B(2) ([t]hree or more

separate episodes of acute congestive heart failure within a consecutive 12 month period . . .). The

statute states that although the longitudinal treatment record is important, twelve months is not

necessarily a requirement for a low ejection fraction, as a record "covering a period of not less than

3 months of observations and treatment is usually necessary, unless we can make a determination

or decision based on the current evidence." *See* § 4.00B(1); *see also* § 4.00B(4)(b) ([In cases where

the impairment is not yet stable,] "we will obtain more evidence 3 months following the event

before we evaluate your impairment."). Thus, §4.02 could presumably be met in less than 12

months. The Listing's language bears this out: while §§ 4.02B(1) & (2) include variations of a

Page 6 - OPINION AND ORDER

twelve-month period, § 4.02B(3) requires only the inability to perform on an exercise tolerance test at a workload equivalent to five METs due to certain symptoms/signs.[1][2]

However, the ALJ found, and plaintiff does not dispute, that there were no ejection fraction measurements taken after January 2011. (Tr. 19.) Further, there is no evidence as to whether the single ejection fraction result was obtained "during a period of stability." Thus, the record does not contain objective evidence of an ejection fraction of 30 percent or less during a period of stability, contrary to plaintiff's contention. *See* § 4.02A(1). Although the ALJ did not affirmatively find that plaintiff failed to establish the requisite stability-period ejection fraction, he did infer that plaintiff's ejection fraction was above the threshold level after the defibrillator was implanted and functioning normally, and based on the absence of imaging abnormalities. (Tr. 20). Given the lack of longitudinal evidence regarding plaintiff's ejection fraction, and considering the improved symptoms and absence of abnormalities in x-rays, the ALJ reasonably inferred the ejection fraction had improved to above 30 percent. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (the ALJ is responsible for resolving ambiguities in the record); *see also Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004) (the commissioner's findings are upheld if supported by inferences reasonably drawn from the record).

Given that the ALJ reasonably found plaintiff did not establish the requisites for § 4.02A, the Listing inquiry is resolved. However, even if § 4.02A was established by plaintiff's single

---

[1] Section 4.02B(1) requires "[p]ersistent symptoms of heart failure . . . ." The Act defines "persistent" as when "the longitudinal record shows that, with few exceptions, the required finding(s) has been present, or is expected to be present, for a continuous period of at least 12 months . . . ."

[2] Section 4.02B(2) requires "[t]hree or more separate episodes of acute congestive heart failure within a consecutive 12-month period . . . ."

ejection fraction reading, he also does not meet any of the § 4.02B requirements. Plaintiff contends the ALJ failed to order a MET panel in order to determine if plaintiff met § 4.02B(3)(a) (inability to perform an exercise tolerance test at a workload equivalent of five METs or less due to dyspnea, fatigue, palpitations, or chest discomfort). Pl.'s Br. 6. The medical record does not contain any MET panel results. While the ALJ acknowledged that plaintiff had symptoms of fatigue, shortness of breath with exertion, and a persistent cough, he noted that those symptoms were attributed to an unidentified respiratory condition such as chronic rhinitis, rather than heart issues, by Theodore Schultz, M.D. in March 2013. (Tr. 19, 324.) Dr. Schultz was aware of plaintiff's cardiac history and viewed the negative chest x-ray from January 2013. (Tr. 324.) The ALJ recognized Dr. Schultz's observation, and plaintiff's testimony, that the cough symptoms were seasonal. (Tr. 19, 44, 322). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)). Here, the ALJ reasonably determined that substantial evidence supported Dr. Schultz's opinion that plaintiff's bronchial symptoms were not related to a congestive heart impairment, and therefore was not obligated to order an MET panel.

In sum, the ALJ did not err in determining plaintiff did not meet or equal Listing §4.02.

II. Plaintiff's Credibility

The Ninth Circuit relies on a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the stated symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 503 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical

evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 503 F.3d at 1036 (citation and quotation marks omitted). Second, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Further, an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . [or] other testimony that appears less than candid . . . ." *Id.* at 1284. However, a negative credibility finding made solely because the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence" is legally insufficient. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Nevertheless, the ALJ's credibility finding may be upheld even if not all of the ALJ's rationales for rejecting claimant testimony are upheld. *See Batson*, 359 F.3d at 1197.

Here, the ALJ found plaintiff less than fully credible based on inconsistencies between the alleged severity of his impairment and the medical evidence, activities of daily living ("ADLs"), and because plaintiff had been seeking employment. (Tr. 20, 21.) First, the ALJ found plaintiff's ADLs indicated that plaintiff was not as limited as he alleged. (Tr. 20.) The ALJ explained plaintiff was able to drive, cook, shop, wash dishes, vacuum, clean, take out the garbage, and mow the lawn. (Tr. 21.) However, activities such as light household chores, limited dog-walking, and occasional preparation of simple meals do not necessarily translate to a full-time work environment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Only if a plaintiff's level of activity is inconsistent with plaintiff's alleged limitations should such activities bear on credibility. *Reddick v. Chater*, 157 F.3d 715, 723 n.1 (9th Cir. 1998). Here, while plaintiff's activities reflect some

Page 9 - OPINION AND ORDER

functionality, the ALJ failed to identify inconsistencies between plaintiff's activities and his alleged level of impairment; he merely articulated plaintiff's fairly low activity level. (Tr. 21.) As such, the ALJ's failure to explain why plaintiff's testimony was inconsistent with his ADLs was erroneous, and thus not a valid rationale for finding plaintiff less than credible. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

Next, the ALJ found plaintiff not fully credible because despite alleging disability, he was still actively seeking employment. (Tr. 21.) During the hearing, the ALJ asked plaintiff if he could perform a job where he was able to sit down. Plaintiff responded that "I would accept it. I would try." (Tr. 35.) Plaintiff continued, "I have to deal with my medication and the necessity of using the restroom quite often. I have a tough time staying concentrated." (Tr. 37.) Defendant argues that "continued receipt of unemployment benefits does cast doubts on a claim of disability, as it shows that an applicant holds himself out as capable of working." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). However, the Ninth Circuit has also held that seeking employment does not necessarily undermine a plaintiff's impairment allegations. *See Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005). Indeed, a plaintiff's credibility is commonly impugned in Social Security case law for *failing* to show adequate motivation to seek or attempt gainful employment. *See, e.g., Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) ("[E]xtremely poor work history" showing "little propensity to work" was a clear and convincing rationale to discount subjective testimony.). The result of this inconsistency is an anamolous result: a plaintiff's credibility is negatively impacted whether he chooses to continue to seek work, or chooses to not seek work. In *Ghanim*, the court ultimately determined that because the plaintiff voluntarily discontinued unemployment benefits shortly after his onset date, it was inappropriate for the ALJ to find him not

Page 10 - OPINION AND ORDER

credible. *Id.* Another court addressing this issue determined that when a plaintiff alleges his impairments preclude all work yet holds himself out as able to perform some work by collecting unemployment benefits, that inconsistency was a valid credibility factor. *See Shelebian v. Colvin*, *available at* 2015 WL 1006581 (C.D.Cal. March 5, 2015) (unpublished opinion). Indeed, the Ninth Circuit has continually explained that a claimant need not be relegated to vegetating in a dark room in order to be eligible for disability benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Moreover, the standard for determining whether a plaintiff is disabled is not whether a plaintiff can perform any work, but rather whether a plaintiff can perform substantial gainful activity, which the Act defines as eight hours per day, five days per week. *See* Social Security Ruling ("SSR") 96-8p, *available at* 1996 WL 374185, *2. Thus, even if a plaintiff sincerely believes he can perform some amount of work, he could conceivably be found disabled under the Act.

Here, plaintiff candidly answered that he was seeking work and indicated he was willing to attempt to maintain employment if provided the opportunity. (Tr. 35.) Plaintiff did not allege that he was completely incapacitated due to his impairment, but consistently articulated his ability to perform modest daily activities. On this record, the fact that plaintiff held himself out as willing to attempt to perform part or full-time work, without more, is not a compelling reason to find him not credible.

Further, the ALJ explained that just prior to having his defibrillator implanted, plaintiff was able to walk two-to-three miles at a slow pace. (Tr. 20.) However, following the successful procedure and corresponding medical evidence of improvement in cardiac function, plaintiff indicated he could no longer walk more than 20 minutes at a time without becoming fatigued and

out of breath. *Id.*; *see* (Tr. 46-47.)  Substantial evidence supports the ALJ's finding.  *See* (Tr. 264-67, 274-75, 282, 299-301, 320-21.)  Moreover, plaintiff does not dispute the finding.

Thus, the ALJ articulated three primary rationales for finding plaintiff less than fully credible, and of the three, two do not meet the clear-and-convincing legal standard.  While the ALJ did not commit legal error in finding plaintiff's allegation that he cannot walk as far without difficulty as he could prior to his heart surgery, the rationale is not particularly strong in isolation.  As mentioned above, the record contains evidence that although plaintiff's cardiac function was improved following his heart treatments, consultative examining physician Dr. Shultz reported plaintiff was breathless with exertion in conjunction with a persistent cough, which the doctor opined was caused by an upper respiratory tract etiology.  (Tr. 322-25.)  Viewing the record as a whole, while it is possible plaintiff's decreased ability to exert himself even after successful heart treatment is due to exaggeration as the ALJ infers, the objective evidence also supports at least one other legitimate medical reason.  Because the ALJ's remaining reasons are not supported by substantial evidence, and because this reason is weak on this record, the court concludes that the ALJ erred in discrediting plaintiff's testimony.  *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (a single weak reason for discrediting a plaintiff's credibility may be insufficient to meet the specific, clear and convincing standard even if the reason is technically valid); *see also Lingenfelter* 504 F.3d at 1035 (The court "must consider the entire record as a whole, weighing both the evidence that supports and … detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence.").

/ / / / /

/ / / / /

Page 12 - OPINION AND ORDER

III. Lay Witness Testimony

Plaintiff argues the ALJ erroneously discredited the testimony of his wife, Ms. Lisa Frank. The ALJ indicated he accorded Ms. Frank's testimony "some weight," though he found the limitations Ms. Frank noted "do not support a conclusion" that plaintiff is disabled. (Tr. 21.) Lay witness testimony is competent evidence which an ALJ must take into account unless the ALJ provides specific, germane reasons for disregarding it. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *see also Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). Ms. Frank presented information regarding plaintiff's ADLs that were generally consistent with plaintiff's own reports. *Compare* (Tr. 165-70) *to* (Tr. 173-78). She further reported plaintiff is easily fatigued and has shortness of breath. (Tr. 168.) Also of note, Ms. Frank indicated that as a side-effect to plaintiff's furosemide heart medication, he needed to visit the restroom every half hour. (Tr. 170.)

The ALJ failed to provide a reason germane to Ms. Frank to discount her testimony. The ALJ chose to not credit Ms. Frank to the extent her testimony was consistent with plaintiff's testimony regarding his ability to perform certain ADLs, and that he searched for work. (Tr. 21.) Under *Molina,* an ALJ may reject lay witness testimony without providing reasons germane to the witness when the ALJ has already provided germane reasons for rejecting similar testimony. *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012). However, as explained *supra*, the ALJ's rejection of similar testimony from plaintiff was legally insufficient. Because the ALJ's assessment of plaintiff's credibility was erroneous, it cannot be relied upon to also reject testimony of the lay witness. To the extent the he failed to credit the testimony of Ms. Frank, the ALJ erred.

/ / / / /

/ / / / /

IV. RFC Formulation

Plaintiff alleges two errors in the formulation of the RFC. First, plaintiff argues that because his medical record consistently classifies his symptoms on the New York Heart Association ("NYHA") scale at II, his RFC was erroneous. The NYHA II classification states that: "Patients with cardiac disease resulting in slight limitation of physical activity. They are comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea or anginal pain." Pl.'s Br. 7. Plaintiff argues the NYHA II classification constrains him to do less than the RFC, such as the ability to "stand, walk, and sit for 6 out of 8 hours each," and for light positions which predominantly involve sitting, "pushing and pulling of arm and leg controls." *Id.*; (Tr. 18-19.) However, the court cannot conclude that plaintiff's NYHA II classification precludes the level of activity set out in the RFC, as the NYHA II limitations are not facially inconsistent with the RFC. To the extent no facial discrepancy exists, the court declines to disturb the ALJ's finding. *See Batson*, 359 F.3d at 1193 (if evidence exists to support more than one rational interpretation, the court must defer to the Commissioner's decision). The court further notes that despite recognizing plaintiff's NYHA II classification, reviewing physicians Drs. Kerhli and Berner both indicated plaintiff was able to perform light work. (Tr. 59-60, 70-71.) Accordingly, the ALJ reasonably accounted for plaintiff's NYHA II classification in formulating the RFC.

Second, plaintiff argues the ALJ failed to incorporate his need to use the bathroom many times throughout the workday. During the hearing, plaintiff stated that one of the things preventing him from working was "the necessity of using the restroom quite often." (Tr. 37.) Plaintiff further described needing to use the restroom "every 15 to 20 minutes." (Tr. 45.) When asked to clarify, plaintiff stated that his need to use the restroom decreased until he took his twice-daily dose of heart

Page 14 - OPINION AND ORDER

medication. (Tr. 45-46.) The ALJ did not include any reference to extra breaks in the RFC. (Tr. 18-19.)

Defendant argues the court can infer the ALJ rejected plaintiff's restroom requirement allegation on credibility grounds. Def.'s Br. 8. Because the ALJ's credibility finding is inadequate, however, defendant's argument is unavailing. Despite plaintiff's testimony, as well as allegations in his disability application form and testimony from the lay witness, the ALJ did not address plaintiff's asserted restroom requirements. *See* (Tr. 170, 172, 173). Because additional restroom breaks throughout a workday may preclude regular work, the ALJ erred by failing either to proffer a clear and convincing reason for rejecting the testimony, or reasonably incorporating plaintiff's potential need for extra breaks into the RFC.

Because the ALJ erred in assessing plaintiff's credibility and thereby potentially failing to incorporate limitations regarding extra breaks into the RFC, the questions posed to the VE at step five were not based on substantial evidence, and thus the VE's answers are of no evidentiary value. Accordingly, this case must be remanded for further proceedings.

V. Remand

As discussed above, the ALJ's decision contains legal errors. Courts may affirm, modify, or reverse the decision by the Commissioner "with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). Remand for the calculation of benefits is one possible remedy. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)(citations omitted). The Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the record has been fully developed and further proceedings would serve no useful purpose, (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, and (3) if the improperly discredited evidence were

credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020.

Here, plaintiff concedes the proper course is to remand for further proceedings. The court agrees. Further proceedings are required in order to reassess plaintiff's credibility, further develop the extent of plaintiff's limitations, and to procure guidance from a VE. An ALJ is the appropriate arbiter to disambiguate these remaining issues. *See Lingenfelter*, 504 F.3d at 1044.

## Conclusion

For the reasons stated above, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this *19th* of October 2015.

JOHN V. ACOSTA
United States Magistrate Judge